**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHEILA HORTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDCHOICE FEDERAL CREDIT UNION, and DOES 1 through 10,<br><br>Defendants. | **Civil No.:**<br><br>**CLASS ACTION - COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Sheila Horton ("Plaintiff"), by her attorneys, hereby brings this class and representative action against FedChoice Federal Credit Union and other unknown defendants (Does 1 through 10) (the named and unknown defendants will be collectively referred to herein as "FEDCHOICE" or "Defendant"). All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. This is a putative class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all others persons

similarly situated, whose checking accounts were improperly assessed overdraft fees by Defendant. This class action seeks monetary damages, restitution, and injunctive relief against FEDCHOICE arising from FEDCHOICE's breach of its contracts with its customers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that FEDCHOICE charged overdraft fees for transactions for which there was money in the checking account to cover said transactions, thereby breaching the express terms of its consumer contracts. Plaintiff also alleges that because it provided inaccurate and untruthful overdraft information to Plaintiff and the members of the Class regarding the overdraft practice, under Regulation E of the Electronic Fund Transfer Act, 12 C.F.R. § 1005.17, FEDCHOICE was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges. However, FEDCHOICE did charge its customers, including Plaintiff, overdraft fees for ATM and debit card charges.

## PARTIES

2. Plaintiff is a resident of Glenside, Pennsylvania, and was a member of FEDCHOICE at all times relevant to the class action allegations.

3. Based on information and belief, Defendant FEDCHOICE is a state chartered credit union with its headquarters located in Lanham, Maryland.

4. Without limitation, defendants Does 1 through 10, include agents, partners, joint ventures, subsidiaries and/or affiliates of FEDCHOICE and, upon information and belief, also own and/or operate FEDCHOICE branch locations. Each of defendants Does 1 through 10 is a "financial institution" within the meaning of Regulation E, 12 C.F.R. § 1005.2(i).

5. Plaintiff is unaware of the true names of defendants Does 1 through 10. Defendants Does 1 through 10 are thus sued by fictitious names, and the pleadings will be

amended as necessary to obtain relief against defendants Does 1 through 10 when the true names are ascertained, or as permitted by law or by the Court.

6. Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

7. As to the conduct alleged herein each act was authorized ratified or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than Defendant.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of and does business in this District and a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

### A. FEDCHOICE's Unlawful Overdraft Program

10. FEDCHOICE is a Maryland based credit union with approximately $350 million in assets that provides banking services to over 25,000 members through branches in Pennsylvania, Washington D.C., New Jersey, Delaware, Maryland, Virginia and West Virginia. One of the services offered by FEDCHOICE to consumer banking customers is a checking

account. One of the benefits FEDCHOICE offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM (automated teller machine), schedule ACH (Automated Clearing House) transactions such as, certain recurring payments, and other type of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), FEDCHOICE assesses overdraft fees to its customers when it determines that the customer's account is overdrawn.

11. Credit unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center. A Federal Deposit and Insurance Corporation (FDIC) report estimated that overdraft fees represent 74% of the total service charges that are imposed on deposit accounts in the United States. According to the June 11, 2013, report entitled, "CFPB Study of Overdraft Programs"[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14). Further, while credit unions portray themselves to customers as more overdraft and fee friendly than banks, a 2016 study conducted by Moebs Services confirmed that the median overdraft fees charged by credit unions are not statistically significantly less than the median overdraft fees charged by banks.

12. The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", at p. 4). More than 60% of the transactions that resulted in a

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

large overdraft fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p. 8). More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*., at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id*., at p. 10).

13. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. (*Id*., at p. 1). A 25 year-old is 133% more likely to pay an overdraft penalty fee than a 65 year old. (*Id*., at p. 3). More than 50% of the customers assessed overdraft fees earned under $40,000 per year. (*Id*., at p. 4). Non-whites are 83% more likely to pay an overdraft fee than whites. (*Id*., at p. 3).

14. In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues has occurred over the past few years. The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars.

15. The federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 (Regulation E's "Opt In Rule").

16. To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;
- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box;
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of the Opt In Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

17. At all relevant times, FEDCHOICE has had an overdraft program (referred to as "Courtesy Pay") in place for assessing overdraft fees on ATM and debit card transactions, which is: (1) contrary to the express terms of its contracts with members; (2) contrary to how FEDCHOICE represents its overdraft program to its members; and (3) contrary to what members expect when assessed overdraft fees.

18. FEDCHOICE's member contracts advise that FEDCHOICE is entitled to assess an overdraft fee when "the funds in your share account are not sufficient to cover drafts, fees or other items posted to your account" (*see* "Overdrafts" section of "Membership and Account

Agreement Including Disclosures" ("Account Agreement") at p. 10, attached hereto as Exhibit 1). Further, FedChoice's Account Agreement states that as follows:

> Courtesy Pay is a service which our members must affirmatively opt-in to receive the benefit of and which allows us to pay an item written on a member's checking account even it if causes the account to become overdrawn.
>
> Participation in the Courtesy Pay program requires the accountholder to opt-in for the service…it costs nothing unless the privilege is used by initiating check presentment, Electronic Funds Transfers, or other payment or withdrawal requests for more than is on deposit in the account…we will charge the account our normal Courtesy Pay overdraft fee for each time that overdraws the account."

Moreover, based on information and belief, the opt-in agreement ("Opt-In Agreement") entered into by class members that allows FEDCHOICE to assess overdraft fees on ATM and debit card transactions states an overdraft occurs when there is not enough money to cover the transaction. As used herein, the Account Agreement and the Opt-In Agreement are hereinafter collectively referred to as the "Customer Agreements."

19. FEDCHOICE's contractual promises in its Customer Agreements to only assess overdraft fees when there is not enough money in the account to cover the item, was also provided to customers in other disclosures and marketing materials it provided to customers.

20. However, contrary to its Customer Agreements, and other marketing materials indicating that FEDCHOICE will only charge overdraft fees when there is not enough money in the checking account to cover the transaction, FEDCHOICE's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance.

21. The available balance is the actual balance minus anticipated debits in the future

(that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy. The use of an internal available balance rather than the money in the account to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly contrary to FEDCHOICE's Customer Agreements. The result is that FEDCHOICE improperly charges members overdraft fees in situations when there is money in the account to cover the transaction.

22. This practice is in breach of FEDCHOICE's Customer Agreements. Additionally, the practice of charging overdraft fees even when there is sufficient money in the account to cover the transaction is inconsistent with how FEDCHOICE describes the circumstances of when it assesses overdraft fees in other customer materials. Further, FEDCHOICE has failed to inform customers of the conditions under which overdraft fees will be assessed in both its Customer Agreements and other marketing materials.

23. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.

24. Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B. Unlawful Overdraft Fees Assessed to Plaintiff**

25. Plaintiff was harmed by Defendants' practice of charging overdraft fees when there was money in the account to cover the transaction. Plaintiff entered into an agreement, and opted-in the overdraft program with FEDCHOICE, wherein FEDCHOICE contracted to charge overdraft fees only if there was not money to cover the transaction. FEDCHOICE breached its Customer Agreements with Plaintiff, and in breaching the Opt-In Agreement, violated Regulation E. It will be necessary to obtain Defendant's records to determine each occasion

when FEDCHOICE engaged in this practice and the damage to Plaintiff as a result. However, to give one example, on January 2, 2015, Plaintiff had a beginning balance of $916.28 in her account. Several transactions posted on January 2, 2015, starting with a $0.24 credit, an ACH debit for $27.31, and two debit card transactions for $13.71 and $25.71, leaving her with a balance of $849.93. Despite having sufficient money/funds in the account to cover each of those three debit transactions, each of the transactions were assessed a $33 overdraft fee, which was removed from her account on January 6, 2015. Accordingly, it is with reasonable belief that a complete review of Plaintiff's and FEDCHOICE's records will show multiple instances FEDCHOICE improperly charged Plaintiff overdraft fees for transaction(s) despite Plaintiff having money in her account to cover the transaction(s).

26. Moreover, the assessment and unilateral taking of improper overdraft fees, further reduces the balance and amount of funds in the account, resulting in, and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for which FEDCHOICE assesses further overdraft fees. As such, a complete evaluation of FEDCHOICE's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## CLASS ACTION ALLEGATIONS

27. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

28. Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes.

29. The "Class" is composed of two potential classes:

**The Positive Balance Class:**

> **All US residents who have or have had accounts with FEDCHOICE who incurred overdraft fees for ATM and non-recurring debit card transactions when there was money in the checking account to cover the transactions in the four years preceding the filing of this Complaint.**

**The Regulation E Class:**

> **All US residents who have or have had accounts with FEDCHOICE who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of the opt-in agreement which provided inaccurate or misleading information on FEDCHOICE's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transactions since August 15, 2010.**

30. Excluded from the above Class is: (1) any entity in which Defendant have a controlling interest; (2) officers or directors of Defendants; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

31. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

32. This action has been brought and may be properly maintained on behalf of each member of the Class proposed herein under Federal Rule of Civil Procedure 23.

33. **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The

members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

34. Upon information and belief, Defendants have databases, and/or other documentation, of its customers' transactions and account enrollment. These databases and/or documents can be analyzed by an expert to ascertain which of FEDCHOICE's customers have been harmed by its practices and thus, which customers qualify as Class members. Further, the Class definitions identify groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify him or herself as having a right to recover. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

35. **Commonality (Federal Rule of Civil Procedure 23(a)(2) –** This action involves common questions of law and fact. These common questions of law and fact take precedence over those questions that may only affect individual Class members. The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following:

a. Whether Defendant had standardized Account Agreements during the Class period that were provided to its customers;

b. Whether Defendant had standardized Opt-In Agreements during the Class period that was provided to its customers;

c. Whether Defendant's conduct breached the Opt-In Agreement by

use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had money to cover the transactions;

d. Whether Defendant's conduct violated state consumer protection laws; and

e. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

36. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to Defendant's customers' accounts are uniform for Plaintiff and all Class members.

37. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and her counsel intend to prosecute this action vigorously.

38. **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** – The common questions of law or fact identified herein and to be identified through discovery take precedence over questions that may affect only individual Class members. Further, the class action is superior to all other available methods for the fair and efficient adjudication of matter. Because the injuries suffered by the individual Class members may be relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if any

individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby, allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

39. Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

40. The matter is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions

by individual members of the Class will create the risk of:

1) Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

2) Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

1) The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2) The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

3) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4) The difficulties likely to be encountered in the management of a class action.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

41. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

42. Plaintiff and each of the Class members entered into contracts with Defendant covering the subject of overdraft transactions. These contracts were drafted by and are binding on Defendant.

43. The contracts authorized Defendant to assess overdraft fees only for ATM and non-recurring debit card transaction(s) for which there was not money in the account to cover the item(s).

44. Further, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

45. The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendants covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

46. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendants' misconduct.

47. Defendants breached the expressed terms of the contracts by, inter alia, assessing overdraft fees when there was money in the account to cover the transaction(s).

48. Alternatively, Defendants breached the implied covenant of good faith and fair dealing based on this practice.

49. As a proximate result of Defendants' breach of the contracts, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**SECOND CAUSE OF ACTION**
**(Unjust Enrichment/Restitution)**

50. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

51. As a result of the wrongful misconduct alleged above, Defendant unjustly received millions of dollars in overdraft fees.

52. Because Plaintiff and the Class members paid the erroneous overdraft fees assessed by Defendant, Plaintiff and the Class members have conferred a benefit on Defendants. Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it was conveyed, and yet have voluntarily accepted and retained the benefit conferred. Should it be allowed to retain such funds, Defendants will be unjustly enriched. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

**THIRD CAUSE OF ACTION**
**(Money Had and Received)**

53. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

54. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

55. As a result, Defendant has in its possession money, which in equity, belongs to Plaintiff and the Class members, and thus, this money should be refunded to Plaintiff and the Class members. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

**FOURTH CAUSE OF ACTION**
**(Negligence)**

56. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57. In general, people have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant had and continues to have a duty to maintain and preserve its customers' accounts and to prevent diminishment of those accounts though its own wrongful acts. Specifically, Defendant owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there was money in the account.

58. Defendant breached this duty by unreasonably mishandling the accounts of its customers, including Plaintiff and the Class members, by taking funds its customers' accounts by way of overdraft fees for transactions under circumstances in which those overdraft fees should

not have been assessed.

59. As a proximate result of Defendant's negligence, Plaintiff and each Class member has been damaged in an amount to be proven at trial. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

**FIFTH CAUSE OF ACTION**
**(Violation of Electronic Fund Transfer Act)**

60. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

61. Because of its failure to truthfully and accurately provide the conditions under which an overdraft fee will be assessed, Defendant failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees on customers' accounts through an overdraft program for ATM and non-recurring debit card transactions.

62. As a result of assessing overdraft fees in circumstances for which it did not garner the consent necessary to do so pursuant to Regulation E, Defendant has harmed Plaintiff and the Class.

63. Due to Defendant's failure to comply with Regulation E, 12 C.F.R. § 1005.17, Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

**PRAYER**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be

proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there was money in the account to cover the transaction, and providing accurate and reliable information regarding the overdraft practice;

5. For costs;

6. For pre-judgment and post-judgment interest as provided by law;

7. For attorneys' fees under the Electronic Fund Transfer Act, the common fund doctrine, other applicable law, and the customer account agreement; and

8. For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class members demand a trial by jury on all issues so triable.

DATED: January 26, 2016

BY: ______________________________

Joseph G. Sauder, (#82467)
Email: JGS@chimicles.com
Matthew D. Schelkopf, (#89143)
Email: MDS@chimicles.com
Alison G. Gushue, (#203669)
Email: AGG@chimicles.com
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Richard D. McCune, CA State Bar #132124*
rdm@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Taras Kick, CA State Bar #143379*
taras@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

**Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff Shiela Horton and the Putative Class*