IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEILA HORTON, individually, and on behalf of all others similarly situated, | : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| FEDCHOICE FEDERAL CREDIT UNION and DOES 1 through 10, | : : | No.  16-0318 |
| Defendants. | : | |

**MEMORANDUM**

**DITTER, J.**                                                          October 12, 2016

      Plaintiff, Sheila Horton, has filed a class action suit challenging the fees charged for overdraft protection by a credit union, FedChoice, and unnamed individuals. Defendants allege the instant case should be stayed or dismissed because Ms. Horton and FedChoice are parties to a broad, written, enforceable arbitration agreement that governs "any dispute between" them.  Because I conclude that the methods and procedures which Defendants assert give them the right to arbitration may be of questionable validity, I shall deny their motion and direct the parties to engage in discovery.

      Ms. Horton opened her original checking account with the predecessor to FedChoice on February 13, 1986.  On September 21, 2015, Ms. Horton may have signed up for an online service which permitted FedChoice members to make electronic transfers between their FedChoice accounts and accounts in other financial institutions.  In order to avail herself of this service, Defendants contend that she was required to accept an online

"Service Agreement" which contains a mandatory arbitration clause. Defendants assert that Ms. Horton agreed to the terms of the Service Agreement. Ms. Horton contends she did not and that even if she did agree, it was limited to disputes about inter-bank transfers of funds.

Defendants have attached the Declaration of Phyllis Mauck, a FedChoice employee, who described the process of registering for the online electronic transfer service. Ms. Mauck stated that the Service Agreement was provided to Ms. Horton online. Immediately following the Service Agreement was the statement, "I acknowledge that I have the disclosure (sic) and agree to all terms and conditions." Still online, there is a provision, "I accept." Unless a member had accepted the "disclosure," i.e. the Service Agreement, he or she could not use FedChoice's inter-bank service. As proof that she had accepted the Service Agreement, Ms. Mauck states Ms. Horton later used that service. Defendants have also attached a copy of the "Service Agreement" as it appeared in a pop-up window and as it would have been seen by anyone considering the service. The twelve page Service Agreement contains the arbitration clause on page ten.

Without question, the Service Agreement is a contract of adhesion. FedChoice has set the terms and conditions. Ms. Horton could either accept those terms or be denied FedChoice's inter-bank transfer service. She had no bargaining power. The contract was all or nothing.

While contracts of adhesion may be enforced, they invite an inquiry into whether

they are procedurally and substantively unconscionable.  Here the invitation to examine both is loud and clear:  twelve pages of legalese presented online with the arbitration clause buried on page 10, and arbitration procedures that might be found to require too much with too little chance for success.

I conclude that the validity of the Service Agreement is a disputed issue.  It follows that the parties are entitled to discovery on the question of arbitrability.  *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764 (3d Cir. 2013).

An appropriate order follows.